IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JAMES WILLIAM SORRELL, as )
Administrator of the ESTATE of )
WILLIAM EDWARDS SORRELL, ) CIVIL ACTION NO.
deceased, )
) 01-AR-1177-S
Plaintiff, )
)
v. )
)
CITY OF CALERA, et al., )
)
Defendants. )

## MEMORANDUM OPINION

Before this court is the motion for summary judgment filed by defendants the City of Calera ("Calera") and Calera police officer John Stephens ("Stephens") in this action brought by James William Sorrell as personal representative of the estate of William Edwards Sorrell ("Sorrell"), a pre-trial detainee who committed suicide at the Calera Jail. Plaintiff invokes 42 U.S.C. § 1983, charging deliberate indifference.

### Undisputed Facts

The facts in this case are brief, relatively undisputed, and tragic. Early on the morning of August 5, 2000, Stephens noticed a car going the wrong way on County road 20. Stephens activated the blue lights on his squad car and gave chase. Immediately after Stephens turned on his lights, the errant car sped away,

but, while attempting to turn, slipped off the pavement and rolled into a ditch, coming to rest upside down. A passenger and a drunken Sorrell soon emerged, more or less unscathed, from the inverted car. When asked to recite the alphabet, Sorrell could not get past the letter "R", and twice almost fell down while standing in front of Stephens. Stephens arrested Sorrell, but, because he had someone, or something, named "Cheetah" in the back seat, perhaps a police dog, Stephens radioed to his only other comrade working that night, officer Terry Wilson ("Wilson") to rendevous with him and drive Sorrell to the jail.

During the drive to the jail, Sorrell, who, unbeknownst to the police had had a heart attack a few days prior, complained of chest pains. The paramedics met Sorrell at the jail and pronounced him medically fit, which prompted the officers to deny Sorrell's request to visit the hospital. Sorrell never disclosed to the officers that he had just suffered a heart attack  During the booking procedure, Sorrell was belligerent and difficult. He subjected the officers to a profane tirade, and threatened to "get even with [the officers]" and telling them that they "will remember this." At one point, he dropped to the floor in what the officers believe was an attempt to feign fainting in order to get them to take him to the hospital.

As the officers were booking Sorrell, the alarm at "Sunny Foods" sounded, indicating a possible break in. Standard Calera

2

procedure requires officers to remove a prisoner's belt before leaving him in a cell.  While it was neither standard nor required procedure, the established practice in Calera required two police officers to respond to alarm calls.  Stephens estimates that based upon Sorrell's resistance during the booking procedure, it would have taken four or five minutes to remove Sorrell's belt.

Faced with the choice of allowing Wilson to respond to the alarm call alone, waiting an additional four or five more minutes to respond, or locking Sorrell in his cell with his belt and then removing it after checking on Sunny Foods, Stephens chose the third option.  The officers brought Sorrell to the cell and then directed Lisa Holley, ("Holley"), the dispatcher, to check on Sorrell in fifteen minutes.  Fifteen to twenty minutes later, Holley walked back to Sorrell's cell, and found him dead, having hanged himself by his belt.  At no point during the arrest nor the booking procedure did Sorrell make any threats of suicide.

**Analysis**

"[I]n a prisoner suicide case, to prevail under section 1983 for violation of substantive rights, under either the eighth or fourteenth amendment, the plaintiff must show that the jail official displayed deliberate indifference to the prisoner's taking of his own life."  *Tittle v. Jefferson County Commission*,

10 F. 3d 1535, 1539 (11th. Cir. 1994)(internal citation and punctuation omitted).  In order to be deliberately indifferent, a defendant must have "(1) subjective knowledge of a risk of serious harm; [and] (2) disregard [] that risk; (3) by conduct that is more than mere negligence." *McElligott v. Foley*, 182 F. 3d 1248, 1255 (11th. Cir. 1999).

   No evidence has been presented to the effect of that Stephens, or any city of Calera employee, had "subjective knowledge of a risk of serious harm."  "[I]n this circuit a finding of deliberate indifference requires that officials have notice of the suicidal tendency of *the* individual whose rights are at issue in order to be held liable for the suicide of that individual." *Tittle* at 1539(emphasis in original).  Stephens did not know, nor had any reason to expect, that Sorrell would commit suicide.  That Stephens recognizes that he ought to remove a prisoner's belt, as a general suicide precaution, does not impute to him knowledge about *this* prisoner's proclivity to kill himself.  If Stephens failed to interpret Sorrell's statement, "you will remember this" as a threat of suicide, such a failure, at best, would constitute negligence and not deliberate indifference.  In fact, it is questionable that it could present a jury question of negligence, but that is a mater for the state court.  Because Sorrell cannot meet the requirements of the first *McElligott* prong and his 1983 claim against Stephens and Calera

4

fails.

Having determined that the federal claim is due to be dismissed on summary judgment, this court is without jurisdiction over the remaining state law claim.  By separate order, this court will grant summary judgment and dismiss with prejudice the federal claim and will dismiss without prejudice the state law claim.

DONE this **30**th day of May, 2002.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE